The **STATE** of Ohio, Appellee,

v.

**RUSNAK**, Appellant.

[Cite as *State v. Rusnak* (1997), 120 Ohio App.3d 24.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–96–220.

Decided May 30, 1997.

*Julia R. Bates,* Lucas County Prosecuting Attorney, and *Bruce J. Sorg,* Assistant Prosecuting Attorney, for appellee.

*Sheldon S. Wittenberg* and *John Czarnecki,* for appellant.

SHERCK, Judge.

This appeal comes to us from a judgment of conviction and imposition of sentence issued by the Lucas County Court of Common Pleas in a felony drug case. Because we conclude that the trial court did not err in denying appellant's motion to suppress evidence found as a result of a lawful search, we affirm.

At 10:00 a.m. on October 23, 1995, Trooper Robert Stevens, a K–9 handler with the Ohio State Highway Patrol interdiction unit, was working the Ohio Turnpike near the Toledo airport exit when he drove behind a Chevrolet motor home with California license plates. While following the vehicle, Trooper Stevens observed it snake approximately one foot to one and a half feet off the right side of the roadway. The drifting repeated itself approximately two more times over a distance of one mile. Suspecting that the driver might be drunk or tired, or that the vehicle might have a mechanical problem, the trooper pulled the motor home over.

Trooper Stevens radioed to the dispatcher that he was making a traffic stop. He then approached the right side of the motor home. Upon request, the driver, appellant Steve Rusnak, stepped out of the vehicle and produced a California operator's license. Within approximately two minutes of the initial stop, Trooper Kevin Kiefer also arrived as backup, standard procedure when a K–9 unit conducts a traffic stop.

Appellant, in talking to Trooper Stevens, stated that he was weaving because he was tired and because of the gusty wind conditions. The trooper also questioned appellant about his trip destination. During the conversation, Trooper Stevens failed to detect any odor of an alcoholic beverage on his breath. However, he noted that appellant's eyes were bloodshot and he looked unshaven and fatigued.

Trooper Kiefer then took appellant back to the patrol car to run a criminal history and validity check on his driver's license. Trooper Stevens also told appellant that he was going to walk his dog around the motor home. At this point, approximately seven minutes had elapsed from the initial stop.

Trooper Stevens approached the motor home with his narcotics dog. Almost immediately, the dog began to react and then alerted near a grate located on the vehicle's right rear. During this time, appellant and Trooper Kiefer were sitting in the patrol car awaiting the return of information regarding appellant's license.

Trooper Stevens informed Trooper Kiefer of the dog alert and the two troopers then proceeded with a probable cause search of the vehicle. As a result of this search, three hundred sixty-six pounds of marijuana were found in two large metal holding tanks located under the rear of the motor home.

Appellant was subsequently indicted on one count of possession of marijuana, in violation of R.C. 2925.03(A)(9), to which he pled not guilty. Appellant moved to suppress his statements and physical evidence on the basis that the search was not justified by the initial reason for the stop. The trial court denied appellant's motion, and appellant ultimately pled no contest to and was found guilty of the lesser included offense of trafficking in marijuana, a violation of R.C. 2925.03(A)(4), and was sentenced.

Appellant now appeals, setting forth the following sole assignment of error:

"The trial court erred to defendant-appellant's prejudice by overruling his motion to suppress."

When reviewing a trial court's ruling on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent credible evidence. *State v. Vance* (1994), 98 Ohio App.3d 56, 58, 647 N.E.2d 851, 852; *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141, 1143–1144. Accepting those facts as true, the appellate court must "determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

Appellant argues that the actions of the state troopers constituted "manipulative practices" beyond the scope and purpose of the initial stop, making the subsequent search and seizure of marijuana illegal. Although this court has previously addressed this issue, we will reexamine the issues presented for purposes of clarification.

It is axiomatic that where there is a reasonable and articulable suspicion to believe that a motor vehicle or its occupants are in violation of the law, stopping the vehicle and detaining its occupants will not violate the Constitution. *Delaware v. Prouse* (1979), 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673–674. In conducting an investigative traffic stop, an officer may detain a motorist for a period of time sufficient to run a computer check on his license, registration, and vehicle plates and to issue him a warning or a citation. *Id.* at 659, 99 S.Ct. at 1399, 59 L.Ed.2d at 671. See, also, *State v. Carlson* (1995), 102 Ohio App.3d 585, 657 N.E.2d 591; *State v. Anderson* (Dec. 13, 1995), Lorain App. No. 95CA006052, unreported, 1995 WL 734036; *State v. Shook* (June 15, 1994), Lorain App. No. 93CA005716, unreported, 1994 WL 263194.

However, the "lawfulness of the initial stop will not support a 'fishing expedition' for evidence of crime." *State v. Smotherman* (July 29, 1994), Wood App. No. 93WD082, unreported, 1994 WL 395128, citing *State v. Bevan* (1992), 80 Ohio App.3d 126, 130, 608 N.E.2d 1099, 1101–1102. Depending on the facts of each individual case, certain police activities have been deemed to be manipulative practices which were beyond the scope and purpose for which the initial stop was

made. For example, it has been determined that, in certain instances, following a script, prolonging a traffic stop in order to "fish" for evidence, separating an individual from his car and engaging in "casual conversation" in order to observe "body language" and "nervousness" may be manipulative practices and, therefore, well beyond the scope of the initial purpose for the stop. See *State v. Chatton* (1984), 11 Ohio St.3d 59, 63, 11 OBR 250, 253–254, 463 N.E.2d 1237, 1240–1241; *State v. Correa* (1995), 108 Ohio App.3d 362, 367–368, 670 N.E.2d 1035, 1038–1039; *State v. Gonyou* (1995), 108 Ohio App.3d 369, 372, 670 N.E.2d 1040, 1041–1042; *State v. Smotherman, supra.* Whether or not a detention was reasonable depends upon the totality of the circumstances and the facts of each case. See *State v. Bobo* (1988), 37 Ohio St.3d 177, 178, 524 N.E.2d 489, 490–491.

In this case, the initial stop was based upon appellant's violation of a traffic law that prohibits a motorist from weaving outside his lane of traffic and onto the side of a roadway. See R.C. 4511.33. The trooper personally observed the violation and stopped the car to determine its cause. Therefore, the initial stop was lawful since it was based upon specific articulable facts and a reasonable suspicion that the vehicle's driver violated the law.

The real question presented by this case is whether a narcotics dog "sniff test" may be conducted as part of a lawful traffic stop without some additional indicia of drug-related activity, or whether such action constitutes a "manipulative" police practice.

If a vehicle is lawfully detained, the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the United States Constitution. *State v. Carlson, supra,* 102 Ohio App.3d at 594, 657 N.E.2d at 597; *State v. Riley* (1993), 88 Ohio App.3d 468, 476, 624 N.E.2d 302, 307–308. See, also, *United States v. Place* (1983), 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110. Ohio courts have held that police need not have a reasonable suspicion of drug-related activity prior to subjecting an otherwise lawfully detained vehicle to a canine sniff. See *State v. Carlson, supra; State v. Anderson* (Dec. 13, 1995), Lorain App. No. 95CA006052, unreported, 1995 WL 734036; *State v. Johnson* (Sept. 29, 1995), Seneca App. No. 13–95–30, unreported, 1995 WL 577818; *State v. Poole* (June 7, 1995), Medina App. No. 2336–M, unreported, 1995 WL 338477; *State v. Ballard* (Feb. 16, 1994), Auglaize App. No. 2–93–12, unreported, 1994 WL 47683.

We are aware that in *State v. Correa, supra,* a case somewhat similar to the present one, we determined that the troopers did not have probable cause to search a vehicle because the actions taken by troopers were manipulative and the inquiry went beyond the scope of the initial stop. In that case, the stop took place after the car had already pulled into a rest stop. In addition, even after the

trooper determined that the driver was not operating under the influence of alcohol, he continued questioning not only the driver but a passenger. We concluded that once the trooper determined that the driver was not violating the law by driving while under the influence of alcohol, there was no longer any justification for continuing the detention. *Id.* We also concluded that the drug interdiction procedures that were thereafter employed by the troopers were for the sole purpose of fishing for evidence of drug activity. *Id.*

■ To clarify *Correa*, we reiterate that purely manipulative police procedures must not be tolerated. However, when a vehicle is lawfully detained, police officers must be permitted to perform routine procedures. These include the check of drivers' licenses and registrations. The use of a narcotics dog for a simple "walk around" of a vehicle may under certain circumstances be part of those procedures. However, in order to determine whether a continued detention is reasonable and justified, the facts of each case must be individually evaluated based upon a totality of the circumstances test.

In this case, appellant had allegedly violated the law by driving off the roadway and was being lawfully detained for a determination of whether he would receive a citation or a warning. Trooper Stevens did not immediately determine the cause of appellant's weaving or whether appellant, who had bloodshot eyes and appeared very fatigued, was driving under the influence of alcohol. The trooper's brief conversation regarding appellant's destination was to determine whether appellant had the odor of alcohol on his breath, rather than to fish for evidence.

Additionally, the routine procedure of checking appellant's driver's license was based upon the need to determine appellant's driving record and status and thus was not beyond the scope of the initial stop. Moreover, the dog sniff procedure was completed while the trooper waited for receipt of the appellant's license information. Therefore, we conclude that, under the facts and circumstances of this case, the trial court did not err in denying appellant's motion to suppress.

Accordingly, appellant's sole assignment of error is not well taken.

*Judgment affirmed.*

HANDWORK and KNEPPER, JJ., concur.