The STATE OF OHIO, Appellant,

v.

LYNN, Appellee.

[Cite as *State v. Lynn* (2000), 137 Ohio App.3d 402.]

Court of Appeals of Ohio,
Fifth District, Fairfield County.

No. 99CA0057.

Decided April 5, 2000.

*Gregg Marx,* Assistant Fairfield County Prosecuting Attorney, for appellant.
*Scott Wood,* for appellee.

GWIN, Presiding Judge.

At approximately 1:00 a.m. on January 15, 1999, Deputies MaryAnn Devault and Jeff Dickson were conducting a routine security check at the Meijer Store in Lancaster. The deputies observed appellee Carl Lynn drive up to the store and park in a handicapped parking space. Deputy Dickson asked appellee if he was handicapped. Appellee responded that he was not. Deputy Dickson then asked appellee to move his car. The deputies proceeded into the store for their routine check.

When the deputies were about halfway into the store, appellant ran toward them, yelling that his car was broken and would need a new battery. Deputy Dickson told him to purchase a battery, fix the car, and move out of the handicapped spot.

When the deputies were at the back of the store, an employee approached them to report that store security wanted to talk to them concerning a shoplifter. The employee working in security pointed appellee out in the parking lot, and said that she had seen him shoplifting in the store. The deputy approached appellee as he was working on the car. The hood to the car was up, and the battery was on the ground next to the car. The deputies asked appellee if he had stolen anything from the store. He ignored them. He then took a screwdriver and started jabbing at the trunk of the car in an attempt to open it. Appellee would not stand still or answer any questions.

Finally, appellee replied that he had not stolen anything from the store. The deputies asked appellee if they could look in the car. Again, appellee initially didn't answer, but kept moving around with the screwdriver, jabbing at the back of the car. Finally he responded that they could not search the car.

Deputy Dickson was a K–9 officer, and his dog Rex was located in the cruiser in the parking lot. Rex is a dual-purpose police dog, performing both general

patrol and narcotics duties. Deputy Dickson asked appellee to step away from the car, as he intended to have the dog sniff the car. When attempting to run the dog around the car, appellee stayed on Deputy Dickson's back, following him, and interfering with his work. Appellee still had the screwdriver in his hand, and would not drop the screwdriver. Concerned with the officers' safety, Deputy Devault handcuffed appellee to put him in the cruiser while the dog finished his work. Deputy Devault had appellee drop the screw driver, although he attempted to pick it up during the patdown. When she was patting him down, she felt something in his front pocket. The object had a plastic sound with a bulge, and from her past experience she believed it to be marijuana. She removed the object, finding that it was in fact a bag of marijuana. Deputy Devault also found rolling papers on appellee's person. She then placed him under arrest for possession of marijuana. Meanwhile, Rex began scratching at the passenger door of the car, indicating that he smelled drugs in that area. Deputy Dickson opened the door, and found high performance gas pedals, which the store claimed appellee had stolen, and a large paper grocery bag containing marijuana.

Appellee was charged with possession of marijuana and possession of Valium, in violation of R.C. 2925.11. He filed a motion to suppress. Following a hearing, the Fairfield County Common Pleas Court granted the motion to suppress. The court found that after appellee denied stealing the gas pedals and refused consent to search the car, the officers had no further suspicion of criminal activity to justify further detention. The court also found that the bulge in appellee's pocket that appeared to be a plastic baggie did not constitute apparent contraband, and removal of the baggie was an invalid search and seizure. Finally, the court found that the smell of marijuana alone is not sufficient to justify a warrantless search, and the alert of the dog did not constitute probable cause to open the door to the car and search.

The state assigns a single error on appeal:

"The trial court's decision granting appellee's motion to suppress was contrary to law and an abuse of discretion."

In the complicated scenario that the instant case presents, probable cause becomes a sequential consideration. Chronological events can enhance or diminish the reasonable perception leading to probable cause. *State v. Kattman* (July 12, 1991), Stark App. No. 8412, unreported, 1991 WL 123724. Taking events in a chronological sequence, an investigation may become the possibility of criminal conduct, which becomes suspicion of criminal conduct (as a purely subjective gut feeling), which becomes articulable suspicion (capable of being factually articulated), which becomes probable cause to believe a crime has been committed. *Id.*

In the instant case, the officers' first contact with appellee was when he parked in a handicapped parking space. This first contact was uneventful, as appellee agreed to move the car. However, after the deputies entered the store, appellee ran toward them, yelling that his car did not run. Deputy Dickson testified that at this point, appellee appeared to be out of control, and was shouting in the store.

As the deputies continued with their routine security check of the store, they were informed by store personnel that appellee had been observed shoplifting gas pedals. While appellee argued at the suppression hearing, and the court appeared to accept, that this is hearsay, the statements of the store personnel were not offered to prove the truth of the matter asserted. Evid.R. 801(C). The statements were not offered to prove that appellee stole the gas pedals, but rather were offered to ascertain the basis for the deputies' further investigation and contact with appellee. For that purpose, the statements were not hearsay. See *State v. Wilks* (Sept. 30, 1993), Montgomery App. No. 13654, unreported, 1993 WL 386246. Based on the statements of the security officers, the deputies had a reasonable suspicion of criminal activity to justify further investigation.

Upon approaching the vehicle, appellee's behavior was erratic and unusual. The deputies testified that he did not appear to be fixing the car, but kept moving to the back of the car. Appellee was jabbing at the trunk of the car using a screwdriver. Appellee would not stand still, would not make eye contact, and initially would not answer their questions. However, appellee eventually stated that he had not stolen anything from the store, and refused consent to search the car.

At this point, the court found that the officers had no further suspicion of criminal activity to justify further detention of appellee, and their inquiry must end. When a police officer's objective justification to continue detention for the purpose of searching the vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to suspicion of any illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure. *State v. Robinette* (1997), 80 Ohio St.3d 234, 685 N.E.2d 762, paragraph one of the syllabus. However, we need not reach the question of whether the officer's belief that appellee was exhibiting behavior indicative of drug activity justified further detention of appellee. The court finds in its judgment entry that the car was inoperable, and in fact all evidence in the record supports the finding that the car was inoperable. Therefore, the car was incapable of being moved, and the deputies were not detaining appellee. At this point in the sequence of events, appellee's movement was not restrained in any way other than asking him to step

away from the vehicle to allow the dog to do his work. Because the vehicle was incapable of being moved, the court erred in finding that the police did not have justification for the detention, and the search was therefore illegal.

Police need not have a reasonable suspicion of drug-related activity prior to subjecting an otherwise lawfully detained vehicle to a canine sniff. *State v. Rusnak* (1997), 120 Ohio App.3d 24, 28, 696 N.E.2d 633, 636–637. The exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the Constitution. *Id.; United States v. Place* (1983), 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110. As noted above, the · car was inoperable, and therefore the vehicle was not detained by the deputies. Because the exterior sniff by the dog is not a search within the Fourth Amendment, Deputy Dickson was permitted to allow Rex to sniff the vehicle.

As Rex began sniffing the car, the undisputed evidence reflects that appellee interfered with the work of the officer and the dog. Appellee stayed behind Deputy Dickson, and followed him around the car. Further, he had the screwdriver in his hand, and would not drop the screwdriver. Based on appellee's erratic behavior and concern for the safety of the officers, at this point Deputy Devault was justified in detaining appellee in the police cruiser so that Dickson could safely complete the sniff of the car.

The driver of a motor vehicle may be subjected to a patdown search for weapons where the detaining officer has a lawful reason to detain the driver in a patrol car. *State v. Evans* (1993), 67 Ohio St.3d 405, 618 N.E.2d 162, paragraph one of the syllabus. While conducting this patdown for weapons, Deputy Devault felt a bulge in appellee's right front pants pocket. When an officer conducts a protective patdown of an individual, nonthreatening contraband that is discovered is subject to seizure, based upon the "plain touch" doctrine, where the incriminating nature of the object is readily apparent. *E.g., Minnesota v. Dickerson* (1993), 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334.

Deputy Devault testified that appellee's right front pocket "had a plastic sound with a bulge, which in our past training, I knew it to be marijuana." Under the plain touch doctrine, this testimony was sufficient to establish that the incriminating nature of the object was immediately apparent. Having found the marijuana, Deputy Devault had probable cause to place appellee under arrest.

Meanwhile, Rex had indicated by scratching at the passenger door that narcotics were present in the area of the car. The court rejected the dog's indication of drugs as probable cause to support a search of the car, citing this court's opinion on the "plain smell" doctrine. *State v. Jones* (Aug. 3, 1998), Ashland App. No. 97COA01240, unreported, 1998 WL 515939. While there is a

split in authority on the issue of the plain smell doctrine, all the cases cited by the parties refer to the ability of a human to smell drugs. The plain smell doctrine has no application to the instant case, where a trained drug dog indicated drugs were present in the car. The evidence established that Rex had worked for the Fairfield County Sheriff's Office for over three years, and had been handled by Deputy Dickson for 18 months. The dog is an aggressive indicator for narcotics, meaning that when he locates illegal narcotics, he scratches. Deputy Dickson testified that throughout Rex's career, every time he had done an alert on a vehicle, Deputy Dickson had found narcotics. Rex had no false indications, and Deputy Dickson had personally witnessed thirty to forty correct positive indications of narcotics. Based on the indication of the trained drug dog that drugs were present, Deputy Dickson had probable cause to open the door of the car to check for narcotics.

The assignment of error is sustained.

The judgment of the Fairfield County Common Pleas Court is reversed. This case is remanded to that court for further proceedings according to law.

*Judgment reversed*
*and cause remanded.*

FARMER and MILLIGAN, JJ., concur.

JOHN R. MILLIGAN, J., retired, of the Fifth Appellate District, sitting by assignment.