DECISION AND JUDGMENT ENTRY
This is an appeal from a May 27, 1999 judgment of the Lucas County Court of Common Pleas accepting a jury verdict finding appellant, Robby Jarvis, guilty of possession of cocaine, a violation of R.C.2925.11(A) and (C)(4)(e), and sentencing him to serve three years in prison. The attorney appointed to represent appellant has filed a motion to withdraw and a brief containing proposed assignments of error pursuant to Anders v. California (1967), 386 U.S. 738. Appellant's appointed counsel also filed an affidavit stating:
 1) that he could not find any arguable issues for appeal after a thorough review of the record and of applicable law; and
 2) that he has sent appellant a copy of his motion to withdraw and of the brief containing the proposed assignments of error to give appellant an opportunity to file any additional arguments he wants this court to consider. Appellant did not file a separate brief or any additional arguments.
The proposed assignments of error presented by appellant's appointed counsel are:
"FIRST PROPOSED ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED BY FAILING TO GRANT THE APPELLANT-DEFENDANT'S MOTION TO SUPPRESS EVIDENCE ILLEGALLY OBTAINED BY THE OHIO HIGHWAY PATROL.
"SECOND PROPOSED ASSIGNMENT OF ERROR:
 THE APPELLANT-DEFENDANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
This court has carefully considered the proposed assignments of error and has independently reviewed the record to decide if any arguable issues exist. For the following reasons, we find that this case is wholly frivolous, see State v. Duncan
(1978), 57 Ohio App.2d 93, 93-94.
In support of his first assignment of error, appellant argues that the trial court erred when it denied his motion to suppress. In the trial court appellant argued that the state troopers who stopped him for an admitted traffic violation of following a vehicle too closely expanded the stop too far by asking him questions unrelated to his offense (like where are you coming from and what is your destination) and that they lacked probable cause to search and seize the rented car he was driving at the time of his stop.
As this court has previously noted, when this court reviews a trial court's ruling on a motion to suppress, this court:
 "must keep in mind that weighing the evidence and determining the credibility of witnesses are functions of the trier of fact. * * * Where there is substantial evidence to support the factual findings of the trial court, its ruling will not be disturbed on appeal absent an error of law." State v. Lopez (Dec. 3, 1993), Lucas App. No. L-92-422, unreported (citations omitted).
In this case, the record does not contain any factual findings from the trial court, but as the Supreme Court of Ohio has said:
 "Crim.R. 12 (E) does not control because * * * [the defendant] did not request factual findings. `In order to invoke the rule, the defendant must request that the court state its essential findings of fact in support of its denial of a motion.' See Bryan v. Knapp (1986), 21 Ohio St.3d 64, 21 Ohio B. Rep. 363, 488 N.E.2d 142.' State v. Brenner (1988), 40 Ohio St.3d 301, 317, 533 N.E.2d 701, 718; State v. Richey (1992), 64 Ohio St.3d 353, 366, 595 N.E.2d 915, 927; State v. Brown (1992), 64 Ohio St.3d 476, 481, 597 N.E.2d 97, 101. [The defendant's] failure to invoke the rule waived any error. State v. Williams (1977), 51 Ohio St.2d 112, 5 Ohio Op.3d 98, 364 N.E.2d 1364." State v. Eley (1996), 77 Ohio St.3d 174, 179.
The record shows that appellant did not ask the court for findings of fact relating to the motion to suppress, so any error resulting from the trial court failing to state its findings of fact was waived. Furthermore, because this court has the full transcript from the hearing on the motion to suppress and the arguments presented by counsel, we can review the issues raised by appellant on appeal relating to the motion to suppress. State v.Eley (1995), Mahoning App. No. 87 C.A. 122, unreported.
Our review of the uncontroverted testimony of the state troopers who stopped appellant show that the questions asked relating to where appellant had been and where he was traveling to had a reasonable basis that did not exceed the scope of the stop. Appellant was initially stopped for following a vehicle too closely; a traffic infraction he admitted he committed. The trooper who made the stop asked appellant for a driver's license and registration of the vehicle. Appellant produced a rental agreement rather than registration of the vehicle. The renter listed in the agreement was not appellant and was not a passenger in the car. In addition, the trooper noticed that the contract listed a date for the return of the vehicle that was already passed. Based upon the information he learned after he looked at the rental agreement, the trooper began asking the questions appellant now argues exceeded the scope of the initial stop. While the questions were unrelated to the traffic violation of following too closely, they were not an unlawful expansion of the scope of the stop. The questions were not merely a "fishing expedition" for proof of further criminal activity without any valid reason for suspicion. Instead, when the totality of circumstances in this case is considered, it is apparent that the questions were reasonably related to valid, reasonable suspicions that arose, after the trooper lawfully obtained and reviewed the rental agreement, that the rental vehicle might be stolen. SeeState v. Rusnak (1997), 120 Ohio App.3d 24, 27-29. Furthermore, while the first trooper was still in the process of writing a citation for following too closely and was completing a check of appellant's driver's license, a second trooper walked a dog trained to sniff for drugs around the rental vehicle driven by appellant and the dog alerted, giving the troopers probable cause for the subsequent search and seizure of the rental car. Id. Therefore, the first proposed assignment of error is without merit.
In support of his second proposed assignment of error, appellant argues that his conviction for possession of cocaine is against the manifest weight of the evidence. In particular, he suggests that the state did not meet its burden to prove beyond a reasonable doubt that he was knowingly in possession of cocaine.
The Supreme Court of Ohio has said:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Blacks supra, at 1594.
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. * * *" State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
Further, the Supreme Court of Ohio has said the jury at trial, not an appellate court, has the function of deciding which witnesses are credible. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Keeping these standards in mind, we now consider the manifest weight arguments presented by appellant.
Appellant was convicted for a violation of R.C.2925.11(A) and (C)(4)(e) which provides:
 "(A) No person shall knowingly, obtain, possess, or use a controlled substance.
"* * *
 "(C) Whoever violates division (A) of this section is guilty of one of the following:
"* * *
 "(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:
"* * *
 "(e) If the amount of the drug involved equals or exceeds five hundred grams but is less than one thousand grams of cocaine that is not crack cocaine or equals or exceeds twenty-five grams but is less than one hundred grams of crack cocaine, possession of cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree."
The term "knowingly" used in R.C. 2925.11 (A) is defined in R.C.
2901.22(B) as follows:
 "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
The term "possession" used in R.C. 2925.11(A) is defined in R.C.
2925.01(K) as:
 "(K) `Possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
Keeping these standards of review and definitions in mind, we carefully reviewed the record in this case.
The transcript shows that the state presented the only witnesses at trial. Three state troopers testified about the circumstances surrounding the stop of appellant, the search of his vehicle and the discovery of cocaine in the trunk. The testimony showed that the troopers were working together as part of a traffic law enforcement and drug interdiction team. The trooper who initially stopped appellant testified his reason for making the stop was that appellant was following a truck too closely. He said as he approached the passenger side of the car appellant was driving, he was surprised to see that appellant was not the only occupant of the car. A black male passenger was reclined in the front passenger seat, and a black female passenger was reclined in the back seat.
The trooper asked appellant for his driver's license and registration. Appellant provided a driver's license and a car rental agreement. The trooper told appellant the reason for the stop, and appellant admitted he was following too closely. The trooper thought appellant remained abnormally nervous throughout the conversation.
Because the renter listed on the rental agreement was not in the car, the trooper asked appellant to step from his car. He patted appellant down to check for weapons and then had appellant sit in the back seat of his cruiser. He then started writing a citation and running a check on appellant's driver's license.
The second trooper to arrive at the scene was the handler for a dog trained to detect the presence of drugs by smell. He testified about the extensive training he has done and continues to do with his dog so that he and the dog remain certified for drug detection.
He said he walked up to the driver's side of appellant's stopped car while the first trooper was talking to appellant from the passenger's side. He noticed that the back seat was loose, as though the seat back had been removed at one time. He thought that was unusual in a new rental car, and his suspicions were triggered. He said he spoke with the first trooper who made the traffic stop and he decided to do a "random" walk around of appellant's car with the dog. During the walk around, the dog alerted as he is trained to do when he smells drugs.
A third trooper had arrived at the scene by this time, and he helped remove the passengers from the car. He patted down the black male passenger and then placed him in the back seat of his cruiser. The trooper with the dog put the dog back in his own cruiser, and then patted down the black female passenger before putting her in the back seat of the cruiser where appellant was already sitting.
The first trooper said he was signaled when the dog alerted, and he told appellant the dog's actions indicated there were drugs in the car appellant was driving. He informed appellant of the Miranda warnings and asked appellant if there were drugs in the car. He said appellant replied: "Not that I know of."
The second and third troopers testified that they did a thorough, methodical search of the car. They found a blackjack hidden in the front seat. They also found two large packages of a white substance hidden in a jacket sleeve. The jacket was in a laundry basket in the trunk of the car. The second trooper testified that he personally drove the two packages to Columbus, Ohio to a lab for testing.
The troopers contacted their supervisor, who in turned called in agents who were working with a Drug Enforcement Administration ("DEA") task force in Toledo, Ohio. The agents talked separately with appellant and his two passengers after the troopers brought them to Toledo.
The agents who talked with appellant both testified that he told them he had known his passengers for about a year. They all lived in Minneapolis, Minnesota. He said he first knew the male passenger who helped him learn how to repair cars. The female passenger was the girlfriend of the male passenger.
Appellant told them the passengers asked him if he would travel with them to Pennsylvania to visit some of their relatives and to help with the driving from Minneapolis, Minnesota and back. He said yes, and they picked him up at his home with the rental car he was driving at the time of the stop.
He said they stayed in two hotels during their trip. Each time they rented two rooms, one for him and one for the passengers. Each time they exchanged keys so that they all had access to both rooms. He said the passengers did leave the hotels without him for brief periods of time.
He said that morning, he awoke to find two packages on the second bed in his room, which he did not use for sleeping. He picked up the packages, looked at them, and thought they might have drugs in them. He told the agents he put the packages back on the bed, packed up his belongings and left. He said he left the packages on the bed when he checked out of the room.
An employee from the state highway patrol crime lab testified that she tested the white substance in the packages found in the trunk of the car appellant was driving. She explained how records were kept to show each person who had possession of the packages from the time they were seized until the time they were tested and then were used as evidence in court. She explained the tests she ran and that the results showed that the white substance was cocaine. The cocaine weighed 809.7 grams.
We find that the test for a conviction being against the manifest weight of the evidence is not met in this case. We cannot find that the testimony presented by the state was not credible, or that it did not show that appellant knowingly had possession of cocaine. Even accepting the story appellant told the DEA agents as true does not result in a conclusion that the state did not meet its burden of proof beyond a reasonable doubt. Appellant's own statements to the DEA agents showed that even though appellant did not personally put the drugs in the trunk of the car he had reason to know that: 1) the packages that appeared in his room were placed there by his traveling companions; 2) the packages probably contained illegal drugs; 3) appellant was given unfettered access to the packages and did not destroy them or question his traveling companions about them or make arrangements to return home without them; and 4) even if he left the packages on the bed in his room his traveling companions could retrieve the packages and put them in the trunk of his car. Appellant's own story therefore lends the necessary evidence for the jury to believe that he was knowingly in possession of the cocaine in conjunction with the passengers in the rental car he was driving on the return trip to Minneapolis. Appellant's second proposed assignment of error is without merit.
Our independent review of the record failed to reveal any arguable issues for appeal, and confirmed the representation by appointed counsel that the presented potential assignments of error lacked any merit. Appellant's two proposed assignments of error are not well-taken. Accordingly, counsel's request to withdraw is granted, and this case is found wholly frivolous. The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ PETER M. HANDWORK, J.
MELVIN L. RESNICK, J., MARK L. PIETRYKOWSKI, J., CONCUR.