OPINION
This is an accelerated calendar appeal submitted to the court on the briefs of the parties. Appellant, Michael J. House, appeals from a judgment of the Mentor Municipal Court overruling his motion to suppress.
The following facts are relevant to this appeal. On June 12, 2000, appellant was charged with one count of possession of drug paraphernalia, in violation of R.C. 2925.14. He pled not guilty to the charge, and the trial court appointed counsel to represent him.
Appellant subsequently filed a motion to suppress the evidence against him on August 11, 2000. As grounds for the motion, appellant argued the following: (1) once the justification for the stop and continued detention had concluded, appellant should have been free to leave; and (2) a pre-arrest statement made by appellant was not intelligently, voluntarily, or knowingly made.
The trial court held a hearing on appellant's motion to suppress on September 5, 2000. The only person to testify during the proceedings was Patrolman James Covell ("Covell"). He related that on the night of June 11, 2000, he was parked alongside Corduroy Road when he observed a vehicle being driven by appellant without a light illuminating the rear license plate. Accordingly, Covell pulled onto Corduroy Road behind appellant and initiated a traffic stop.
When he approached appellant and asked for his driver's license, Covell immediately detected a mild odor of alcohol on appellant's breath and noticed that his eyes were bloodshot. Believing that appellant was possibly driving under the influence of alcohol, Covell asked him to exit the vehicle and perform several field sobriety tests.
According to Covell's testimony, appellant successfully completed each test. As a result, the officer decided to simply issue appellant a warning for the failure to have a light illuminating the vehicle's rear license plate. However, before returning appellant's driver's license and administering the warning, Covell asked appellant whether he "had any alcohol, drugs, guns, [or] anything in the car [the officer] should know about." Appellant told the officer that he did not have any weapons. When Covell continued with the questioning, appellant finally admitted that he had a "bowl" in the car. Based on this statement, appellant was immediately given his Miranda warnings, patted down, and placed in the backseat of Covell's police cruiser. A subsequent search of appellant's vehicle revealed the drug paraphernalia in the center console.
At the conclusion of the hearing, the trial court denied the motion. Appellant then entered a plea of no contest to the single count of possession of drug paraphernalia, and the trial court sentenced him accordingly. From this judgment, appellant filed a timely notice of appeal with this court.
In his only assignment of error, appellant presents two arguments for our review. First, he contends that once Covell determined that he was not driving under the influence of alcohol, the stop should have been concluded because the continued detention was not related to the initial stop and was not supported by reasonably articulable facts giving rise to a suspicion of criminal activity.
At a hearing on a motion to suppress, the trial court functions as the trier of fact. Thus, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366.
On review, an appellate court must accept the trial court's findings of fact if those findings are supported by competent, credible evidence.State v. Retherford (1994), 93 Ohio App.3d 586, 592. After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met. Id.
The standard for judging the constitutional validity of an investigative stop is well-established under both federal and state law.State v. Stamper (1995), 102 Ohio App.3d 431, 436. Both theFourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit any governmental search or seizure, including those conducted during the course of a traffic stop, unless supported by an objective justification. State v. Gray (July 14, 2000), Geauga App. No. 99-G-2249, unreported, 2000 Ohio App. LEXIS 3197, at 5-6.
In the instant matter, appellant does not challenge either the justification for the traffic stop, or the police officer's subsequent investigation of whether he was driving under the influence of alcohol. See State v. Bencie (Dec. 1, 2000), Portage App. No. 2000-P-0004, unreported, 2000 Ohio App. LEXIS 5621, at 6 (holding that the failure to have a license plate properly illuminated is a violation of R.C. 4513.05
warranting an investigatory stop); State v. Eskridge (Mar. 31, 2000), Portage App. No. 98-P-0130, unreported, 2000 Ohio App. LEXIS 1439, at 14 (holding that upon validly stopping a vehicle, a police officer may subsequently perceive facts that indicate the driver was intoxicated, justifying further investigation).
Rather, appellant argues that once Covell decided to only issue him a warning for the violation of R.C. 4513.05, any further unrelated questioning was improper. In other words, appellant claims that the scope and duration of the stop was unlawfully expanded beyond what was necessary to effectuate the original purpose of the stop and subsequent investigation for driving under the influence. Thus, we must decide whether Covell was objectively justified, under the circumstances, in further detaining appellant solely to ask him whether he had any contraband.
After reviewing the transcript of the suppression hearing, we agree with appellant and conclude that Covell was not justified in detaining appellant to question him after deciding to issue a warning. In State v.Robinette (1997), 80 Ohio St.3d 234, paragraph one of the syllabus, the Supreme Court of Ohio held:
 "When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure."
 However, even if the objective justification to continue the stop is not related to the purpose of the original stop and is not based on any articulable facts giving rise to a suspicion of possible criminal activity, a police officer may sometimes briefly detain an individual if the detention promotes a valid public purpose. Specifically, the Supreme Court provided that:
 "* * * police officers, under certain circumstances, may briefly detain an individual without reasonably articulable facts giving rise to suspicion of criminal activity, if the detention promotes a legitimate public concern, e.g., removing drunk drivers from public roadways or reducing the drug trade." Id. at 241.
 Based on this limited exception, the Court in Robinette concluded that the officer "was justified in briefly detaining [the defendant] in order to ask him whether he was carrying any illegal drugs or weapons pursuant to the drug interdiction policy, because such a policy promotes the public interest in quelling the drug trade." Id. Underlying this conclusion was the arresting officer's testimony that according to department policy, officers were required to ask motorists detained for a traffic violation whether they had any illegal drugs and then to ask for permission to search the vehicle.[1]
Turing to the case at bar, there was absolutely no testimony presented during the suppression hearing that Covell was operating under a similar drug interdiction policy. In fact, the officer's actions in this matter were precisely the type of conduct that courts throughout this state have routinely struck down as unconstitutional "fishing expeditions." Statev. Griffin (1999), 133 Ohio App.3d 490, 495; State v. Rusnak (1997),120 Ohio App.3d 24, 27; State v. Venham (1994), 96 Ohio App.3d 649, 655.
This case does not present a situation where a police officer and a motorist were engaged in casual conversation during the course of an otherwise valid traffic stop. Quite to the contrary actually. The interaction between the two men went well beyond the point of casual conversation and more resembled an impermissible investigation, which will not be tolerated. State v. Anderson (1995), 100 Ohio App.3d 688;Retherford, supra.
Once Covell decided to administer only a warning, the reason for the stop ended. Nevertheless, Covell continued to detain appellant and ask him additional questions. However, because there was no objective reason to continue the detention, and, more importantly, there was no "legitimate public concern" that would justify continued detention without reasonably articulable facts giving rise to suspicion of criminal activity, the continued detention constituted an illegal seizure.Robinette at paragraph one of the syllabus.
Moreover, this is not a situation where a police officer was concerned for his safety and would be permitted to ask the motorist if he had any weapons. Mentor v. Schivitz (Dec. 22, 2000), Lake App. No. 99-L-153, unreported, 2000 Ohio App. LEXIS 6113, at 5-7. Simply stated, once all suspicions for the stop had been dispelled, Covell should have issued the warning and let appellant continue on his way.
Based on the foregoing analysis, appellant's sole assignment of error is well-taken. Because we conclude that appellant's continued detention constituted an illegal seizure, it is unnecessary to address appellant's second argument, i.e., that the trial court abused its discretion when it declined to suppress his pre-arrest statement that he had a "bowl" in the car. The judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.
 ______________________________________ JUDGE JUDITH A. CHRISTLEY
O'NEILL, P.J., FORD, J., concur.
[1] The Supreme Court eventually found that the police officer inRobinette did not have any reasonably articulable facts or individualized suspicion to justify the defendant's further detention in order to ask to search his car. Moreover, after finding that the defendant had been unlawfully detained, the court went on to hold that, under to the totality of the circumstances, the defendant did not voluntarily consent to allow the police officer to search his automobile. Robinette at 246. As a result, the Court concluded that the evidence collected in the search was inadmissible. Id.