OPINION
Plaintiff-appellant, the state of Ohio, appeals the decision of the Clermont County Court of Common Pleas granting the suppression motion of defendant-appellee, Raymond L. Vitatoe. We conclude that appellee was not subjected to an unconstitutional search and seizure and reverse the decision of the trial court.
On June 23, 2000, Union Township Police Detectives Pete Ballauer and Larry Willis were assigned to conduct undercover surveillance at the parking lot of the Eastside Inn, a local tavern. The surveillance was prompted by numerous recent reports of underage consumption of alcohol and illegal use of narcotics occurring in the tavern's parking lot. The parking lot was also the scene of recent fights to which the police had responded. Detective Ballauer had participated in prior similar "surveillance details" in the Eastside Inn's parking lot.
Dressed in plain clothes and seated in an unmarked vehicle, the detectives began watching the activities in the parking lot around 10:15 p.m. They observed appellee and a female companion exit the tavern and enter a vehicle parked between sixty and one hundred feet from the detectives. Appellee entered the vehicle on the driver's side and the female entered on the passenger's side. The detectives watched the vehicle for five to seven minutes and during that time none of the vehicle's lights were illuminated and the engine was never started. They suspected that appellee and his companion were consuming alcohol or were engaged in illegal narcotic activity.
The detectives were preparing to investigate when another woman exited the tavern and got into the backseat of the vehicle. The detectives watched the vehicle for approximately five additional minutes. Again, the vehicle's interior or exterior lights were not illuminated, and the vehicle's engine was not started. The detectives continued to suspect the occupants were consuming alcohol or committing a drug offense. They decided to investigate the activities in the vehicle.
The detectives approached the vehicle from the rear for their protection. Detective Willis was on the driver's side of the vehicle, while Detective Ballauer was on the passenger's side. The detectives directed their flashlights into the vehicle. The detectives observed the woman in the backseat leaning forward extending money in her hand. They believed the woman was attempting to complete a narcotics transaction with appellee or his companion. When appellee noticed Detective Willis standing outside of the vehicle with a flashlight, he opened the door and asked what was "going on." The detectives identified themselves as police officers. Detective Willis informed appellee that they had been watching the occupants sit in the vehicle for several minutes and found their conduct to be suspicious. Appellee explained that he and the two women had been looking at a compact disc. He offered to return to the Eastside Inn. However, the detectives requested that the occupants exit the vehicle.
After everyone exited the vehicle, appellee again offered to return to the tavern. The detectives disregarded appellee's suggestion and asked for identification. The detectives then explained why they were present at the parking lot and revealed the nature of their suspicions. When appellee produced his identification, he appeared to Detective Ballauer to be extremely nervous. In response to Detective Ballauer's inquiry, appellee stated that he was the owner of the vehicle. Detective Ballauer requested appellee's permission to search the vehicle. Appellee did not immediately respond. Instead, he looked in the direction of his female companion, who stated that she thought a search of the vehicle would constitute an invasion of their privacy.
Detective Ballauer then asked appellee if he could talk privately with him. Detective Ballauer and appellee stepped away from Detective Willis and the others. Detective Ballauer advised appellee that it was appellee's sole decision whether to consent to the search of the vehicle. Detective Ballauer also informed appellee that he intended to have a canine examine the vehicle regardless of whether appellee consented to the search. Appellee then consented to the search.
Upon searching the vehicle, Detective Ballauer detected a white, flaky substance in the carpet by the front passenger's seat. He suspected that the substance was cocaine. In addition, he found a compact disc jewel case upon which there was also a white powdery residue. Under the jewel case, Detective Ballauer discovered a plastic baggie containing white powder that he suspected was cocaine. When Detective Ballauer confronted appellee with his discoveries, appellee admitted that the substance was his cocaine.
The detectives called for backup and placed appellee under arrest. Officer Richard Wagner arrived and advised appellee of his constitutional rights. Appellee stated that he understood his rights and was willing to make a statement to Officer Wagner. Appellee admitted that the cocaine belonged to him. Appellee stated that he and his girlfriend had purchased the cocaine earlier that day for $125, and that they had used some of the cocaine.
Appellee was indicted for possession of cocaine in violation of R.C.2925.11(A). Prior to trial, appellee filed a motion to suppress the evidence police obtained against him on the basis that the officers violated his right to be free from unreasonable searches and seizures. After holding a hearing on the matter, the trial court granted appellee's motion to suppress the evidence.
In a lengthy written decision, the trial court concluded that the initial contact between appellee and the detectives was not a consensual encounter. The trial court further found that the officers did not have a reasonable suspicion that appellee was engaged in criminal activity because "there is nothing inherently suspicious regarding several persons sitting in a parked vehicle." The trial court further stated that the attempted exchange of money the officers observed could not provide the officers reasonable suspicion that criminal activity was afoot. According to the trial court, the passenger in the backseat of the vehicle could have been repaying a debt, loaning money or "simply have been handing [appellee] money to use when they went through a McDonald's restaurant for food." Further, the trial court concluded that appellee's "illegal detention" and the fact that Detective Ballauer "misinformed" appellee that he would "continue to detain him in order to conduct the canine sniff" prevented appellee from freely consenting to the search of the vehicle. As such, the trial court found that the police obtained the evidence against appellee in violation of his right to be free from unreasonable searches and seizures.
The state appeals the trial court's decision and raises one assignment of error for review. In its assignment of error, the state argues that the trial court erred by granting appellee's motion to suppress. The state maintains that there were no constitutional violations between appellee and the police. We agree.
In reviewing a trial court's decision on a motion to suppress, an appellate court must accept the trial court's factual findings if they are supported by competent, credible evidence. State v. Anderson (1995),100 Ohio App.3d 688, 691. However, an appellate court independently determines without deference to the trial court whether the court applied the appropriate legal standard to the facts. Id.
The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. See, e.g., UnitedStates v. Hensley (1985), 469 U.S. 221, 226, 105 S.Ct. 675, 678. However, not all personal encounters between law enforcement officials and citizens are "seizures" that implicate Fourth Amendment guarantees.Florida v. Bostick (1991), 501 U.S. 429, 434, 111 S.Ct. 2382, 2386. Even when officers lack reasonable suspicion of criminal activity, they may generally approach an individual and ask questions, Florida v. Rodriguez
(1984), 460 U.S. 491, 501, 105 S.Ct. 308, 310-311, ask to examine identification, INS v. Delgado (1984), 466 U.S. 210, 216,104 S.Ct. 1758, 1762, and request consent to search luggage. Bostick,501 U.S. at 434, 111 S.Ct. at 2386. The inquiry used to determine whether a particular encounter is a seizure is whether, taking into account all of the surrounding circumstances, a reasonable person would feel free to decline the officer's request or terminate the encounter. Bostick,501 U.S. at 436-37, 111 S.Ct. at 2387. As long as a reasonable person would feel free to disregard the officer, the encounter is consensual and no reasonable suspicion is required. Bostick, 501 U.S. at 434,111 S.Ct. at 2386.
These same principles equally apply to citizens in motor vehicles. Some encounters between police officers and citizens in vehicles are purely consensual and do not implicate Fourth Amendment rights. See,e.g., State v. Johnston (1993), 85 Ohio App.3d 475, 478. Generally, an officer's approach and questioning of the occupants of a parked vehicle does not constitute a seizure and does not require reasonable, articulable suspicion of criminal activity. State v. Boys (1998),128 Ohio App.3d 640, 642; City of Hamilton v. Stewart (Mar. 5, 2001), Butler App. No. CA2000-07-148, unreported; State v. Robinson (Sept. 8, 1997), Warren App. No. CA97-04-093, unreported. Nor does an officer encroach upon any right secured by the Fourth Amendment by using a flashlight to illuminate the interior of a vehicle. Texas v. Brown (1983),460 U.S. 730, 739-740, 103 S.Ct. 1535, 542; State v. Schwab (Jan. 29, 2001), Clermont App. No. CA2000-07-055, unreported. As with any encounter between an officer and a citizen, a court must look to the totality of the circumstances to determine whether a police-citizen encounter involving motor vehicles is consensual or a seizure. Id.
In light of the circumstances surrounding the encounter, the detectives did not seize appellee when they approached his parked car and illuminated its interior. Appellee voluntarily opened his car door and initiated a conversation with Detective Willis. The initial encounter was entirely consensual, not a stop or seizure that implicatesFourth Amendment scrutiny and requires reasonable suspicion. A seizure occurred only when the detectives ordered appellee from the vehicle and disregarded his request to return to the tavern. The inquiry then becomes whether the seizure was constitutionally justifiable.
An investigatory stop is constitutionally justifiable within the parameters of the Fourth Amendment when a police officer is able to point to articulable facts that give rise to a reasonable suspicion that an individual is currently engaged in or is about to engage in criminal activity or conduct. Terry v. Ohio (1968), 392 U.S. 1, 21,88 S.Ct. 1868, 1880. The propriety of an investigative stop must be viewed in light of the totality of the circumstances as they would be viewed through the eyes of a reasonable police officer who must react to facts available at the time of the stop. Id. at 22, 88 S.Ct. at 1880; State v.Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus, certiorari denied, 488 U.S. 910, 109 S.Ct. 264. In making this determination, an officer may rely upon a person's suspicious activity, the character of the area as a high crime area, the officer's experience with similar types of situations, and his training. Bobo at 179; State v. Freeman
(1980), 64 Ohio St.2d 291, 295, certiorari denied (1981), 42 U.S. 822,102 S.Ct. 107.
In Freeman, the Ohio Supreme Court found the following to be reasonable articulable facts to support an investigatory stop: (1) the location of the investigation was a high crime area; (2) the officer was "quite aware" of recent criminal activity in the motel parking lot in which appellee was parked; (3) the time of night was 3:00 a.m.; and (4) the defendant had been sitting alone in his car at the rear of the building for approximately twenty minutes with the engine turned off. Freeman at 295.
Similarly, the facts in this case lead to the inexorable conclusion that the detectives in this case had a reasonable articulable suspicion that appellee was engaging in criminal activity. The parking lot of the Eastside Inn was a high crime area in that the police had responded to numerous recent reports of fights, underage consumption of alcohol and illegal narcotic use. The detectives were conducting a surveillance of the parking lot as a result of the recent incidents of criminal activity. Detective Ballauer was well aware of the recent criminal activity in the tavern parking lot and had participated in prior similar "surveillance details." Detective Willis had made "countless" prior arrests for drug and alcohol crimes involving vehicles similarly parked. The detectives watched appellee sit in his car with two people without turning on the engine or any lights for at least ten minutes. When the detectives illuminated the interior of the vehicle with their flashlights, they witnessed the passenger in the backseat holding a handful of cash toward the front of the car. Based on the detectives' experience, they believed they had uncovered a drug transaction. Based on the totality of the circumstances, the officers had a reasonable articulable suspicion that criminal activity was afoot.
We disagree with the trial court's conclusion, also advanced by appellee, that the attempted exchange of money the officers observed is not an articulable fact that connotes criminal conduct because it is capable of numerous, even imaginative, innocent explanations.
 The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.
 Adams v. Williams (1972), 407 U.S. 143, 145-46, 92 S.Ct. 1921, 1923. The possibility of an innocent explanation for conduct does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal activity. United States v. Sokolow (1989), 490 U.S. 1, 9-10, 109 S.Ct. 1581, 1586-87. Indeed, wholly lawful conduct, even a series of apparently innocent acts, might justify the reasonable suspicion that criminal activity is afoot and warrant further investigation. Id. The relevant inquiry is the degree of suspicion that attaches to particular types of non-criminal acts, not whether particular conduct is "innocent" or "guilty." Id. at 10, 109 S.Ct. at 1587.
Since the detectives did not illegally detain appellee, the trial court erred by granting the motion to suppress on that basis. The only remaining issues to address is whether the trial court correctly concluded in the alternative that appellee's consent to search the vehicle was not free and voluntary because Detective Ballauer "misinformed" appellee that he would detain him in order to conduct a canine sniff of the vehicle.
It is well-settled that in order to waive the Fourth Amendment privilege against unreasonable searches and seizures, the accused must give a consent which is voluntary under the totality of all the surrounding circumstances. Schneckloth v. Bustamonte (1973),412 U.S. 218, 222 93 S.Ct. 2041, 2045; State v. Childress (1983),4 Ohio St.3d 217, paragraph one of the syllabus. There is nothing in the record to suggest that appellee did not voluntarily consent to the search of his vehicle. Detective Ballauer instructed appellee that, as the owner of the vehicle, only he was able to consent to its search. The fact that Detective Ballauer told appellee that he intended to have a canine sniff the vehicle does not change the analysis.
Police need not have a reasonable suspicion of drug related activity prior to subjecting an otherwise lawfully detained vehicle to a canine sniff. State v. Rusnak (1997), 120 Ohio App.3d 24, 28. Further, the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the fourth amendment to the constitution. Id. See, also, United States v. Place (1983),462 U.S. 696, 707. In this case, the detectives had a reasonable articulable suspicion that appellee was involved in an illegal narcotic transaction. The reasonable suspicion would have permitted the detectives to detain appellee for that length of time reasonably necessary to secure the presence of a drug-sniffing dog to confirm or deny their suspicions. Instead, appellee consented to the search. Under the totality of the circumstances in this case, appellee's consent was voluntary.
Since the detectives' conduct did not deprive appellee of his constitutional rights to be free from unreasonable searches and seizure, the trial court erred in granting the motion to suppress. The state's assignment of error is sustained.
The judgment of the trial court is reversed and this cause is remanded to the trial court for further proceedings according to law and consistent with this opinion.
YOUNG, P.J., and WALSH, J., concur.