JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Micquel Leaks appeals the trial court's denial of his motion to suppress. He assigns the following error for our review:
 "I. The trial court erred in overruling appellant's motion to suppress where the search violates appellant's rights against unreasonable search and seizure under the Fourth Amendment to the U.S. Constitution and Section 14, Article 1
of the Ohio Constitution."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} Leaks filed a motion to suppress based on his contention the police conducted an illegal search and seizure of his person after stopping him for a minor traffic violation. *Page 2 
 Suppression Hearing {¶ 4} At the suppression hearing, Officer Richard Mastnardo testified that on April 14, 2006 at approximately noon, he was patrolling the area of Lee Road in Shaker Heights in a marked car. As he entered the intersection of Lee Road and Scottsdale, he observed a car approach him and stop in the middle of the intersection, even though there was enough time for the vehicle to make a left hand turn. As the officer passed the vehicle, the driver of the car, who was later identified as Micquel Leaks, gave the officer a "startled" look. The officer then noticed in his rearview mirror that Leaks failed to activate his turn signal when making the turn. The officer made a U-turn and pursued Leaks to initiate a traffic stop. Officer Mariano, who was in a different squad car, observed Mastnardo stop the vehicle and came to the scene to assist the officer.
 {¶ 5} Officer Mastnardo approached the vehicle and informed Leaks the reason he was stopped was the failure to activate his turn signal. He then asked Leaks if he had a valid driver's license. Leaks started reaching down towards the right side of his leg. The officer ordered Leaks to keep both hands on the steering wheel and instructed him if he wanted something he would tell him. In spite of this order, Leaks continued to place his right hand on the side of his right leg. Officer Mastnardo advised him several times to stop reaching, but Leaks continued to reach between the seats. Because the officer feared that Leaks had a weapon, he drew *Page 3 
his weapon and ordered him from the car. The officer observed that Leaks was nervous; his carotid artery in his neck was beating rapidly; his voice was shaky; he was breathing rapidly; and his hands were shaking.
 {¶ 6} The officer conducted a pat-down search and felt a lump in Leak's left front pants pocket. He asked Leaks what was in the pocket, but Leaks refused to answer. He then asked whether he could reach into Leak's pocket, Leaks answered, "no." Based on his experience, the officer believed the item was contraband. The officer informed Leaks he was going to detain him and handcuffed him and placed him in Officer Mariano's squad car.
 {¶ 7} The officer then let his K-9 dog sniff Leaks' car. The dog alerted to the exterior side of the driver's door. The dog was allowed into the vehicle and alerted to the area where Leaks had been sitting. A search of the area did not reveal narcotics. The officer then asked Leaks if he had narcotics on his person, to which he responded "no." The officer reached into Leaks' front left pants pocket and retrieved crack cocaine and six hundred dollars in cash. The officer advised Leaks he was under arrest for drug trafficking.
 {¶ 8} An inventory search of the vehicle revealed a loaded revolver located in a jacket pocket in the trunk. During booking, the officer asked Leaks if he had *Page 4 
contraband at home. Leaks responded, "maybe a little weed and some money."[1] He then gave the officer his address.
 {¶ 9} A search warrant for Leak's home was obtained and executed that evening. Crack cocaine and marijuana were found in prepackaged baggies. Also found was a plate with crack cocaine crumbs on it, an electronic scale, and a sawed-off shotgun with 12 gauge shell casings.
 {¶ 10} Officer Mariano testified he acted as Officer Mastnardo's back-up. He stayed on the passenger side of the vehicle. Through the rear passenger window, he saw the driver reach down between the seats. He heard Officer Mastnardo issue an order. He drew his weapon and remained focused on the driver's right hand because he was afraid the driver was going to pull out a weapon.
 {¶ 11} Micquel Leaks admitted that he made a turn without using his turn signal because the signal was not working properly. He denied making any evasive movements and contended he merely reached for his wallet. He claims as he reached for his wallet, the officer towards the back of the vehicle made a comment that he was reaching for a gun. He claimed he only reached one time. He also claims he was placed in the squad car without being patted down and denied telling the officers he had drugs at his home. *Page 5 
 {¶ 12} The trial court denied Leaks' motion to suppress. Subsequently, Leaks entered a no contest plea to two counts of drug possession, three counts of drug trafficking, one count of unlawful possession of a dangerous ordnance, one count of receiving stolen property, and one count of possession of criminal tools. The trial court found Leaks guilty of the charges and sentenced him to a total sentence of five years in prison.
 Denial of Motion to Suppress {¶ 13} In his sole assigned error, Leaks contends the trial court erred by denying his motion to suppress. He argues the officer had no legal basis to conduct a pat-down search of his person or for entering his pocket to retrieve the drugs. We disagree.
 {¶ 14} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses.[2] On review, an appellate court must accept the trial court's findings of fact if those findings are supported by competent, credible evidence.[3] After accepting such factual findings *Page 6 
as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met.[4]
 {¶ 15} In order to conduct a pat-down search for weapons, an officer must have a "specific and articulable" belief based on the "reasonably prudent man" standard that an individual is armed and dangerous.[5] In the instant case, Officer Mastnardo testified that Leaks continued to reach down by his right leg even though the officer ordered him to keep his hands on the steering wheel. He stated this caused him to fear that Leaks had a weapon. Thus, he ordered him out of the vehicle and conducted the pat-down search. Based on the officer's testimony, he had a sufficient basis to conduct a pat-down search.
 {¶ 16} Leaks argues he did not continually disobey the officer's order and only reached down once to retrieve his wallet. However, in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.[6] Thus, we defer to the trial court to resolve issues of credibility.
 {¶ 17} Leaks also contends the officer had no legal basis to reach into his pocket to retrieve the drugs because once his pat-down revealed no weapons, this *Page 7 
should have ended the search; thus, the detention was only allowed for the purpose of issuing a traffic citation.
 {¶ 18} We agree that when detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to conduct a background check and issue a ticket.[7]
However, the detention of a stopped driver may continue beyond this time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop.[8]
 {¶ 19} In the instant case, Leaks continued to reach down between the seats of the vehicle after being ordered several times to keep his hands on the wheel. The officer noticed that Leaks was nervous when he exited the vehicle because his voice was shaky, he was breathing heavily, his hands were shaking, and his pulse was beating quickly. In addition, when the officer conducted the pat-down search, he felt the lump in Leaks' pocket and suspected it was narcotics. These cumulative facts gave the officer reasonable, articulable suspicion of criminal activity to further investigate.
 {¶ 20} The officer retrieved his K-9 dog from his squad car to sniff Leaks' vehicle. The dog alerted to the driver's side door. Ohio courts have held that if a *Page 8 
legitimate traffic stop is under active investigation, a drug detection dog may be used to determine the presence of illegal drugs if the length of time the suspect is detained prior to the sniff is short.[9] Here, the dog was already on the scene, therefore, the detention of Leaks only lasted several minutes. We also note that even if the officer's feeling the lump in Leaks' pocket did not provide a reasonable, articulable suspicion of criminal activity to support further investigation, the use of a drug detection dog does not constitute a "search" and an officer is not required, prior to a dog sniff, to establish either probable cause or a reasonable suspicion that drugs are concealed in a vehicle.[10]
 {¶ 21} After alerting to the exterior door, the dog was allowed into the car where it alerted to the area where Leaks had been sitting. No drugs were found in that area. Therefore, the officer ascertained the dog was alerting to the scent left by the drugs in Leaks' pants pocket. Given these facts, the officer had probable cause to reach into Leaks' pocket to retrieve the drugs. In fact, the officer did not reach into the pocket even though he suspected it contained drugs, until he verified it by using the K-9. Accordingly, Leaks' sole assigned error is overruled.
 Judgment affirmed. *Page 9 
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, P.J., and MARY J. BOYLE, J., CONCUR
[1] Tr. at 51.
[2] State v. Mills (1992), 62 Ohio St.3d 357, 366.
[3] State v. Retherford (1994), 93 Ohio App.3d 586, 592.
[4] Id.
[5] Terry v. Ohio (1968), 392 U.S. 1, 21, 27, 88 S.Ct. 1868, 1880,1883, 20 L.Ed.2d 889, 906, 909.
[6] State v. Hopfer (1996), 112 Ohio App.3d 521.
[7] State v. Batchili, 113 Ohio St.3d 403, 2007-Ohio-2204; State v.Keathley (1 988), 55 Ohio App.3d 130, 131.
[8] State v. Batchili, supra at ]}14; State v. Myers (1990),63 Ohio App.3d 765, 771; State v.Venham (1994), 96 Ohio App.3d 655.
[9] City of Blue Ash v. Kavanagh, 113 Ohio St.3d 67, 2007-Ohio-1103
atl}22-25; State v. Rusnak (1997), 120 Ohio App.3d 24, 28; State v.French (1995), 104 Ohio App.3d 740, 749.
[10] See State v. Carlson (1995), 102 Ohio App.3d 585, 594; State v.Rusnak, supra. *Page 1