[Cite as *State v. Minyoung*, 2012-Ohio-411.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## VAN WERT COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                      CASE NO.  15-11-11

    v.

JOSH MINYOUNG,                           **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Van Wert County Common Pleas Court
Trial Court No. CR-10-12-191

**Judgment Affirmed**

**Date of Decision:   February 6, 2012**

APPEARANCES:

    *John E. Hatcher*  **for Appellant**

    *Martin D. Burchfield*  **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Josh Minyoung (hereinafter "Minyoung"), appeals the Van Wert County Court of Common Pleas' judgment of conviction and sentence following Minyoung's plea of no contest to one count of possession of drugs. Minyoung contends the trial court erred when it denied his motion to suppress. For the reasons that follow, we affirm.

{¶2} On December 7, 2010, Sergeant Black received a Crime Stoppers tip that Minyoung would be returning to Van Wert, Ohio later that evening from Fort Wayne, Indiana, where he had purchased prescription narcotics to sell in Van Wert. (March 10, 2011 Tr. at 22). The tip provided Minyoung's name, a description of the vehicle, the license plate number, the approximate time when Minyoung would return to Van Wert, and that Minyoung would be driving on U.S. Route 30. (*Id*. at 22-23). A reliable confidential informant confirmed the Crime Stoppers tip. (*Id*. at 23).

{¶3} At approximately 10:00 p.m. that evening, Trooper Coil observed an extremely loud, dark colored vehicle driving on U.S. Route 30. (*Id*. at 5-6). Trooper Coil followed the vehicle, intending to stop the driver because of the loud exhaust. (*Id*. at 6). When Trooper Coil ran the vehicle's license plate information, he discovered it was the vehicle from the Crime Stoppers tip. (*Id*. at 7). Trooper

Coil contacted Sergeant Black to request that he bring the K-9 unit to the scene. (*Id*.). Trooper Watson also joined Trooper Coil for the stop. (*Id*. at 7-8).

{¶4} Sergeant Black walked his K-9 around the vehicle while Trooper Coil spoke with Minyoung, the driver, who was still seated in his vehicle. (*Id*. at 11). Minyoung admitted there was a problem with the exhaust. (*Id*.). During their conversation, the K-9 alerted to the vehicle, indicating there were drugs inside. (*Id*. at 12). Trooper Coil removed Minyoung from the vehicle while Sergeant Black removed the passenger. (*Id*. at 12-13). Officer Coil patted down Minyoung for weapons and Sergeant Black patted down the passenger. (*Id*.). During the pat-down, Trooper Coil asked Minyoung to remove his shoes. (*Id*.). Minyoung took a small baggy of marijuana out of his right shoe and gave it to Trooper Coil. (*Id*.). Trooper Coil again asked Minyoung to remove his shoes. (*Id*. at 14). Minyoung complied, revealing a bag of pills in his left shoe. (*Id*. at 14-15). Sergeant Black then searched the passenger's shoes and the vehicle, but did not find any other contraband. (*Id*. at 15, 38). Sergeant Black and Trooper Coil determined the pills were Dilaudid, a Schedule II substance, and arrested Minyoung. (*Id*. at 16-17).

{¶5} On July 13, 2011, Minyoung was indicted for possession of drugs in violation of R.C. 2925.11(C)(1)(b), a felony of the third degree. (Doc. No. 2). Minyoung filed a motion to suppress any evidence obtained from the stop on the grounds that it was an illegal search and seizure. (Doc. No. 17). The Van Wert

County Court of Common Pleas held a hearing on the motion to suppress on March 10, 2011. (March 10, 2011 Tr. at 1). The court denied Minyoung's motion to suppress on May 3, 2011. (Doc. No. 22).

{¶6} On May 13, 2011, Minyoung entered a plea of no contest to possession of drugs in violation of R.C. 2925.11(C)(1)(b), a felony of the third degree. (Doc. No. 25). The trial court sentenced Minyoung to one year imprisonment on June 29, 2011. (Doc. No. 28).

{¶7} On July 28, 2011, Minyoung filed a notice of appeal and now raises one assignment of error.

**ASSIGNMENT OF ERROR NO. I**

**WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT-APPELLANT'S MOTION TO SUPPRESS**

{¶8} In his single assignment of error, Minyoung argues the trial court erred when it denied his motion to suppress for two reasons. First, Minyoung contends Trooper Coil and Sergeant Black did not have lawful grounds to detain him beyond the initial traffic stop. Minyoung argues the continued detention was a "fishing expedition" to find evidence of a drug crime. Secondly, Minyoung contends Trooper Coil did not have legal grounds to search his shoe. Minyoung argues the request to remove his shoe went beyond the scope of a pat-down, constituting an illegal search. In response, the State contends Trooper Coil

lawfully detained Minyoung and performed a pat-down for weapons. The State also argues Officer Coil's actions were lawful because he had probable cause to search Minyoung. We will address each argument in turn.

{¶9} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 797 N.E.2d 71, ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id*.

{¶10} When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8. With respect to the trial court's conclusions of law, however, our standard of review is de novo and we must decide whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706, 710, 707 N.E.2d 539 (4th Dist. 1997).

## 1. Detention

{¶11} We will first address the issue of Minyoung's continued detention. Minyoung argues Officer Coil did not have any lawful grounds to continue to detain him after the initial stop for a traffic violation.

{¶12} The Fourth Amendment of the United States Constitution protects citizens from unreasonable governmental searches and seizures. *United States v.*

*Jacobsen*, 466 U.S. 109, 112, 104 S.Ct. 1652, 80 L.E.2d 85 (1984). Generally, warrantless searches and seizures are per se unreasonable. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.E.2d 576 (1967). Once the defendant has established that he was subjected to a warrantless search or seizure, the burden shifts to the state to prove the search or seizure met one of the exceptions to the warrant requirement. *Maumee v. Weisner*, 87 Ohio St.3d 295, 297, 720 N.E.2d 507 (1999).

{¶13} "It is axiomatic that where there is a reasonable and articulable suspicion to believe that a motor vehicle or its occupants are in violation of the law, stopping the vehicle and detaining its occupants will not violate the Constitution." *State v. Rusnak*, 120 Ohio App.3d 24, 27, 696 N.E.2d 633 (6th Dist. 1997), citing *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.E.2d 660 (1979). An officer may detain an individual during an investigative stop for the length of time required to run a computer check on the individual's license, registration, and vehicle plates, and to issue a citation or warning. *Prouse* at 659.

{¶14} If the officer has lawfully detained the vehicle, using a trained narcotics dog to sniff the vehicle's exterior does not constitute a search in violation of the individual's Fourth Amendment rights. *Rusnak* at 28, citing *State v. Carlson*, 102 Ohio App.3d 585, 594, 657 N.E.2d 591 (9th Dist. 1995). An officer does not need reasonable suspicion of drug related activity before

subjecting the lawfully detained vehicle to a canine sniff. *Id.* The officer may lengthen the time of the stop if the officer discovers additional facts leading to a reasonable inference of criminal activity. *State v. Williams*, 9th Dist. No. 09CA009679, 2010-Ohio-3667, ¶ 15. "[O]nce a trained drug dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband." *Carlson* at 600.

{¶15} In the present case, Trooper Coil had lawful grounds to detain Minyoung after the initial traffic stop. The trial court found that Trooper Coil "decided to pull the vehicle over for a traffic violation regarding the loud exhaust." (Doc. No. 22). Trooper Coil then ran the plates and discovered the vehicle matched the information for a potential drug offense. (*Id.*). Thus, Trooper Coil lawfully detained Minyoung for an investigative stop regarding his traffic violation and potential drug activity. Sergeant Black walked his K-9 unit around the vehicle while Trooper Coil discussed the loud exhaust with Minyoung. (March 11, 2011 Tr. at 11). At that time, the K-9 unit alerted to drugs in the vehicle. (Doc. No. 22). Trooper Coil did not extend the initial investigatory stop beyond the time required to run the computer check and discuss the violation with the driver because the K-9 sniff and alert occurred before Trooper Coil had completed the initial investigation. Furthermore, the K-9 alert provided additional facts leading to the reasonable inference that Minyoung was engaged in criminal activity.

Consequently, Trooper Coil had lawful grounds to continue to detain Minyoung for the purpose of investigating a possible drug crime. We cannot find that the trial court erred in denying Minyoung's motion to suppress based on the length of his detention.

## 2. Pat-Down

{¶16} Minyoung also argues Officer Coil's request that Minyoung remove his shoes was outside the scope of a pat-down, constituting an illegal search in violation of Minyoung's Fourth Amendment rights.

{¶17} An officer may pat-down an individual for weapons during a traffic stop if the officer has reason to believe the individual may be armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.E.2d 889 (1968). The officer does not need probable cause to arrest the individual for a crime before the officer can pat-down the person for weapons. *Id.* The purpose of the pat-down is to search for weapons that could harm the officer during the stop, not to search for evidence of a crime. *State v. Kelley*, 4th Dist. No. 10CA3182, 2011-Ohio-3545, ¶ 18, citing *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993). As a result, the pat-down is limited in scope "to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry* at 29. The officer's right to frisk an individual is virtually

automatic when the person is suspected of a crime, such as drug trafficking, where the individual is likely to be armed. *Kelly* at ¶ 19, citing *Evans* at 413.

**{¶18}** The trial court found that Trooper Coil took Minyoung to the back of his vehicle to pat him down for officer safety. (Doc. No. 22). Trooper Coil testified, "I went ahead and started the search* * *it is pretty much the same way that I use all the time. I go from the top down. I got on to his two shoes, I asked him to take off his shoes." (March 11, 2011 Tr. at 13). Trooper Coil also testified that he often has individuals take their shoes off when he does a search for officer safety, stating, "I generally, I mean depending on the level of threat, I will. I have many times have made them take their shoes off." (*Id*. at 39). Trooper Coil further testified that after he asked Minyoung to remove his shoes, "he kind of shrugged and grabbed the small baggy of marijuana out of his right shoe and he gave it to me." (*Id*. at 13). According to Trooper Coil, he then had Minyoung remove both of his shoes and discovered a bag of Dilaudid pills in the left shoe. (*Id*. at 14-16). In response to a question regarding the purpose of the search, Trooper Coil stated, "Basically I was looking for weapons and contraband." *Id*. at 39. Trooper Coil further testified, "I thought that with as much as I had as per the informant and the probable cause with the search of the dog to go ahead and do a more detailed search." (*Id*.).

{¶19} The trial court found that Trooper Coil had Minyoung remove his shoes "as he normally does in this type of search." (Doc. No. 22). The trial court also found that Minyoung removed the marijuana from his right shoe prior to removing the shoe and that Trooper Coil discovered the Dilaudid pills when Minyoung removed his left shoe. (*Id.*). The trial court held, "Those circumstances taken into account, as a whole, justified the search that the officers made which led to the discovery of the illegal substance on the Defendant's person." (*Id.*).

{¶20} We agree with the State that Trooper Coil had the right to pat-down Minyoung for weapons, but, in this case, we cannot find that requiring Minyoung to remove his shoes was part of the pat-down. Based on the Crime Stoppers tip, the information from the confidential informant, and the K-9 unit's alert, Trooper Coil had reason to suspect Minyoung possessed drugs. Since the right to frisk an individual suspected of drug trafficking is "virtually automatic," Trooper Coil had the right to pat-down Minyoung for purposes of officer safety. *See Kelly* at ¶ 19. Trooper Coil's pat-down could include places reasonably expected to contain guns, knives, or other weapons that may harm an officer. *See Terry* at 29. Thus, the pat-down of Minyoung was appropriate because weapons could have easily been concealed beneath his clothing. However, we cannot find any evidence in the record providing Trooper Coil with a reason to suspect Minyoung had weapons hidden in his shoes. Trooper Coil did not testify that Minyoung had

difficulty walking, standing, or exhibited other clues to make Trooper Coil believe it was necessary to check Minyoung's shoes for purposes of officer safety.

{¶21} Furthermore, "an officer's statement regarding his intent in conducting a search carries great weight in determining whether a search was a weapons patdown search or a full scale search." *Kelley*, 4th Dist. No. 10CA3182, 2011-Ohio-3545, at ¶ 20. Trooper Coil testified that he was looking for weapons and contraband while searching Minyoung. (March 11, 2011 Tr. at 39). Trooper Coil also testified that he believed he had probable cause to do a more "detailed search." (*Id*.). A search for evidence is outside the scope of a pat-down for purposes of officer safety. *Kelley* at ¶ 18. Because Officer Coil testified that he believed he had probable cause to perform a more thorough search and was looking for contraband in addition to weapons, we cannot find that Officer Coil discovered the Dilaudid pills pursuant to a lawful pat-down.

### 3. Probable Cause

{¶22} The State argues that even if the search of Minyoung's shoes was inappropriate as part of the pat-down, Officer Coil still had probable cause to search Minyoung based on the totality of the circumstances. We agree.

{¶23} A search or seizure is reasonable under the Fourth Amendment if it is based upon probable cause and executed pursuant to a warrant. *Katz*, 389 U.S. 347 at 357. If an officer has probable cause, he must then obtain a warrant prior to the

search or seizure unless an exception to the warrant requirement applies. *State v. Moore*, 90 Ohio St.3d 47, 49, 734 N.E.2d 804 (2000). "'Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that [an] offense has been committed.'" *Kelley* at ¶ 22, quoting *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.E.2d 134 (1959). A court must review the totality of the circumstances known to the officer at the time of the search to determine if the officer had probable cause to conduct the search. *Kelly* at ¶ 23, citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.E.2d 142 (1964). The officer must have sufficient objective facts to justify a magistrate to issue a warrant. *Id.* "Thus, the officer must possess sufficient facts from a reasonably trustworthy source that a search will uncover evidence of a crime." *Id.* An officer may gain this information from an informant's tip. *Id.* at ¶ 25.

> **\*\*\*Police have probable cause to conduct a search for contraband when detailed information provided to them by a confidential but reliable informant is subsequently corroborated, in some significant combination, with respect to the name or physical description of a suspect, the location of the illegal sale, the time of the sale, the description of the automobile driven by the suspect or the car's license plate numbers.**

*Id.*, quoting *State v. Walker*, 10th Dist. No. 97APA09-1219 (July 28, 1998). If an officer has probable cause, the officer may conduct a search without a warrant if an exception to the warrant requirement exists. *Moore* at 52. The danger that evidence will be lost or destroyed if the officer does not immediately conduct a

search is one such exception. *Id.* "Because marijuana and other narcotics are easily and quickly hidden or destroyed, a warrantless search may be justified to preserve evidence." *Id.*

{¶24} Officer Coil had probable cause and an exception to the warrant requirement justifying a warrantless search of Minyoung. Officer Coil had probable cause based on the Crime Stoppers tip, the corroboration of the tip by the confidential informant, and the K-9 unit's alert. The Crime Stoppers tip provided detailed information regarding Minyoung's drug activity including his name, where he was driving from, his intended destination, the route he would be using, the approximate time he would be arriving in Van Wert, a description of the vehicle, and the vehicle's license plate number. (March 11, 2011 Tr. at 22-23). A reliable confidential informant then confirmed this information. (*Id.* at 23). Finally, the K-9 unit alerted to drugs in the vehicle while Minyoung was inside the car. (*Id.* at 12). Based on the totality of the circumstances, Officer Coil had detailed information from two sources that Minyoung was engaged in drug activity at the time of the stop. The K-9 unit's alert then provided an additional reason for Officer Coil to suspect Minyoung was currently in possession of illegal drugs. Since Officer Coil had sufficient objective facts to believe Minyoung was presently engaged in criminal activity, he had probable cause to conduct a search.

{¶25} Officer Coil also had an exception to the warrant requirement justifying a warrantless search. Officer Coil reasonably suspected Minyoung was transporting narcotics to sell in Van Wert. "Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement." *Moore* at 51. Thus, the search of Minyoung's vehicle did not violate his Fourth Amendment rights. However, Officer Coil searched Minyoung's person prior to the search of the vehicle and the search was not justified as incident to his arrest. Consequently, the search must meet an exception to the warrant requirement justifying the intrusion or any resulting evidence should be suppressed. *Id.* at 52. The Supreme Court of Ohio has recognized that narcotics can be easily hidden and destroyed. *Id.* Consequently, an officer may be justified in conducting a warrantless search of an individual suspected of possessing drugs prior to searching the vehicle to prevent the potential destruction of evidence. *Id.* In this case, Officer Coil was justified in conducting a warrantless search of Minyoung's shoes because Officer Coil had sufficient facts supporting his belief that Minyoung was presently transporting drugs, and Minyoung could have hidden or destroyed the drugs if not immediately searched. We hold that Officer Coil was justified in conducting a warrantless

search of Minyoung because he had probable cause and the search met an exception to the warrant requirement.

{¶26} Minyoung's assignment of error is, therefore, overruled.

{¶27} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**