[Cite as *State v. Douglas*, 2013-Ohio-4563.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                        CASE NO. 9-13-07

    v.

JEROME A. DOUGLAS,                   O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 12 CR 266

**Judgment Affirmed**

**Date of Decision: October 15, 2013**

APPEARANCES:

    *Raymond A. Grogan, Jr.* for Appellant

    *Brent W. Yager* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Jerome A. Douglas ("Douglas"), appeals the February 7, 2013 judgment of the Marion County Court of Common Pleas journalizing his conviction, after pleading no contest, for one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(2),(C)(4), a felony of the third degree, and sentencing him to serve twenty-four months in prison. Douglas assigns as error the trial court's decision to overrule his motion to suppress and the trial court's decision to overrule his "Motion for Discharge" based on an alleged speedy-trial violation.

{¶2} The following facts were revealed at the hearing held to address Douglas' motion to suppress. On June 30, 2012, Troopers Ruth and Tidaback were working together as part of a shield detail throughout the City of Marion and Marion County.[1] At approximately 7:53 p.m., an anonymous tip was received by the MARMET drug task force tip line indicating that a vehicle transporting drugs was en route from Columbus to the Marion area. Specifically, the anonymous tip indicated that a silver four-door vehicle driven by a black female and carrying two black male passengers was headed to a residence on Windsor Street in Marion. The tip also included the name of one of the male passengers—who was not the defendant in this case. The information received in the tip was relayed to

---

[1] According to the record, a shield detail is a unit comprised of multiple county, state, and local law enforcement agencies that work together to address traffic violations, alcohol and drug violations, and other criminal matters.

Troopers Ruth and Tidaback, who then proceeded to a crossover on U.S. 23 south of Marion to observe northbound traffic. Trooper Ruth activated his speed laser to also look for any speed violations.

{¶3} Less than thirty minutes passed when the Troopers spotted a vehicle matching the description given in the tip travelling in the left passing lane. The vehicle was driven by a black female and contained two black male passengers. Trooper Ruth assessed the speed of the vehicle at 62 mph, which was below the 65 mph speed limit. Acting on the information in the tip, the Troopers pulled out of the crossover and began to follow the vehicle. Near the U.S. 23/S.R. 309 interchange, the Troopers observed the driver move from the left passing lane to the right lane without using a turn signal. The driver proceeded down the ramp from U.S. 23 to S.R. 309, where Trooper Ruth activated his overhead lights and stopped the vehicle for failing to signal when changing lanes.[2]

{¶4} Once the vehicle stopped, Trooper Ruth approached the driver side window and Trooper Tidaback approached the front passenger side window. The Troopers indicated for both the driver and the front passenger to roll down the windows so they could speak to the occupants. Upon the windows rolling down, both Troopers immediately smelled the odor of raw marijuana emanating from the vehicle. Both troopers testified that at this moment they exchanged glances and

---

[2] Notably, the driver was also cited for this offense. *See* R.C. 4511.39.

nodded their heads, confirming they both sensed the same distinct smell. Trooper Ruth addressed the female driver, while Trooper Tidaback maintained visual contact on both passengers.

{¶5} Trooper Ruth testified that he explained to the driver the reason for the stop and asked for her driver's license. He asked the driver to step out of the vehicle and advised her of her Miranda rights. Trooper Ruth then inquired about the marijuana odor. The driver admitted that they smoked marijuana in the car on their way back to Marion from Columbus. Trooper Ruth secured the driver in his cruiser and returned to the passenger side of the stopped vehicle and approached the defendant, Douglas, who was seated in the front passenger seat. Trooper Tidaback then positioned himself near the right rear bumper of the vehicle and maintained visual contact on the right rear passenger's hands.

{¶6} Trooper Ruth testified that he determined that he had probable cause to search the vehicle for drugs based on the initial odor of raw marijuana from inside the vehicle and the admissions of the driver noted above. Trooper Ruth then asked Douglas to exit the vehicle so that he could begin the vehicle search. When the door opened, Trooper Ruth observed a dollar bill and a small amount of marijuana, enough to roll a cigarette, hanging out of Douglas' pant pocket. Douglas exited the vehicle and Trooper Ruth asked him about the marijuana. Douglas confirmed the substance in his pocket was marijuana.

{¶7} Trooper Ruth then had Douglas step back behind the vehicle. Based on the marijuana and the fact that Douglas was wearing very baggy pants which could easily hide a weapon or additional drugs, Trooper Ruth conducted a pat-down search of Douglas. During the search, Trooper Ruth felt a "hard object" below the groin area of Douglas' pants. Trooper Ruth suspected the object was drugs. He then advised Douglas of his Miranda rights and asked him to take the object out of his pants. Douglas complied with the request by reaching into his pants and pulling out a bag containing crack cocaine. Douglas placed the drugs on the hood of Trooper Ruth's cruiser. Douglas was subsequently placed under arrest.

{¶8} On July 3, 2012, Douglas was indicted on one count of possession of cocaine, in violation of R.C. 2925.11(A),(C)(4), a felony of the second degree, and one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(2),(C)(4), a felony of the second degree. Douglas entered a plea of not guilty to the charges.

{¶9} On October 22, 2012, Douglas filed a motion to suppress challenging the constitutionality of the stop, detention, and search.

{¶10} On December 7, 2012, the trial court held a hearing on Douglas' motion to suppress, where Troopers Ruth and Tidaback provided testimony.

{¶11} On December 17, 2012, the trial court overruled Douglas' motion to suppress, finding the stop, detention, and search to be constitutionally valid.

Specifically, the trial court found that Trooper Ruth was justified in doing a pat-down search of Douglas for weapons and that Douglas voluntarily removed the drugs from his pants at Trooper Ruth's request.

{¶12} On January 30, 2013, Douglas filed a "Motion for Discharge for Failure to Obtain Speedy Trial," alleging that the 270-day time-frame to bring him to trial under R.C. 2945.71(C) had expired.

{¶13} On February 7, 2013, the trial court overruled Douglas' motion, finding that the speedy trial time was tolled for several periods due to Douglas filing various motions and therefore the 270-day timeframe had yet to expire.

{¶14} On the same day, Douglas withdrew his plea of not guilty and entered a plea of no contest to an amended count of trafficking in cocaine, in violation of R.C. 2925.03(A)(2),(C)(4), a felony of the third degree. A nolle prosequi was entered for the remaining count of possession of cocaine.

{¶15} The trial court subsequently sentenced Douglas to serve twenty-four months in prison.

{¶16} Douglas now appeals, asserting the following assignments of error.

## ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE AND THE TRIAL COURT'S FINDING ON PAGE 3 OF THE JUDGMENT ENTRY THAT "THE TROOPER WAS . . . JUSTIFIED IN CONDUCTING A WEAPONS SEARCH," IS CONTRARY TO ESTABLISHED OHIO LAW.**

**ASSIGNMENT OF ERROR NO. II**

**THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE IN THAT ONCE TROOPER RUTH DETERMINED THAT THE OBJECT HE FELT IN MR. DOUGLAS' "GROIN AREA" WAS NOT A WEAPON, THE SEARCH SHOULD HAVE STOPPED.**

**ASSIGNMENT OF ERROR NO. III**

**THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE AS THE TRIAL COURT'S FINDING ON PAGE 3 OF THE JUDGMENT ENTRY THAT MR. DOUGLAS' REMOVAL OF THE OBJECT WAS "VOLUNTARY" IS CONTRARY TO ESTABLISHED OHIO LAW.**

**ASSIGNMENT OF ERROR NO. IV**

**THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT-APPELLANT'S MOTION FOR DISCHARGE FOR FAILURE TO OBTAIN SPEEDY TRIAL.**

*Fourth Assignment of Error*

{¶17} In his fourth assignment error, Douglas asserts that the trial court erred when it overruled his "Motion for Discharge for Failure to Obtain Speedy Trial." Because this raises a "threshold" issue, we elect to address this assignment of error first.

{¶18} The Sixth Amendment to the United States Constitution as applied to the States through the Fourteenth Amendment, as well as Article I, Section 10 of the Ohio Constitution dually afford a defendant the right to a speedy trial. In

Ohio, the right to a speedy trial is also statutorily defined. *See* R.C. 2945.71–2945.73. Specifically, R.C. 2945.71(C)(2) states that a person who is charged with a felony must be brought to trial within 270 days after he is arrested. The day of arrest does not count when computing a speedy-trial violation. *See State v. Masters*, 172 Ohio App.3d 666, 2007–Ohio–4229, ¶ 12; Crim.R. 45(A).

**{¶19}** The running of the speedy-trial clock may be temporarily stopped, or tolled, only for reasons listed in R.C. 2945.72. These tolling events "do not unconditionally extend the time limit in which an accused must be brought to trial, but, rather, this limit is 'merely extended by the time necessary in light of the reason for the delay.' " *State v. Arrizola*, 79 Ohio App.3d 72, 75, (3d Dist. 1992), quoting Committee Comment to H.B. 511. In reviewing "a speedy-trial issue, a court is required to count the days of delay chargeable to either side and determine whether the case was tried within applicable time limits." *State v. Sanchez*, 110 Ohio St.3d 274, 2006–Ohio–4478, ¶ 8.

**{¶20}** Here, Douglas was arrested on June 30, 2012 and his speedy-trial time commenced on July 1, 2012. Douglas' trial was scheduled for February 11, 2013—226 days after his arrest. However, the record reflects that Douglas was incarcerated for all but thirty-four of those days while awaiting trial.[3] According to R.C. 2945.71(E), each day Douglas was held in jail in lieu of bail on the

---

[3] On July 24, 2012, Douglas was released on bond. However, on August 27, 2012, Douglas was arrested on an unrelated charge and his bond in this case was "suspended." (Doc. No. 20).

pending charge is to be counted as three days. Allowing for the three-day calculation for periods of incarceration, the total time between Douglas' arrest and his scheduled trial would be construed at 610 days.

{¶21} In its judgment entry overruling Douglas' "Motion for Discharge" based on speedy-trial grounds, the trial court identified three events that resulted in time chargeable to Douglas, and therefore tolled the 270-day time limit. These three tolling events are clearly reflected in the record.

{¶22} First, Douglas filed a request for discovery on July 12, 2012, which tolled the speedy-trial time until the prosecution's response was received on August 9, 2012. *See State v. Brown*, 98 Ohio St.3d 121, 124 (1998) (holding that a defendant's discovery requests tolls the running of the speedy-trial period under R.C. 2945.72(E)).

{¶23} Second, Douglas subsequently retained new counsel and filed a motion to continue a pre-trial hearing which was scheduled on August 24, 2012 in order to allow his new counsel time to prepare for the case. The pre-trial hearing was re-scheduled for October 25, 2012. Thus, the speedy-trial time was again tolled from August 24, 2012 to October 25, 2012. *See* R.C. 2945.72(H) (providing that speedy-trial time may be extended by "the period of any continuance granted on the accused's own motion").

{¶24} Third, on October 22, 2012, Douglas filed a motion to suppress. The trial court held a hearing on the motion on December 7, 2012 and ruled on the matter on December 17, 2012. This resulted in the speedy-trial time being tolled from October 22, 2012 to December 17, 2012. *See* R.C. 2945.72(E) (providing that speedy-trial time may be extended by "any period of delay necessitated by reason of a * * * motion * * * made * * * by the accused").

{¶25} After deducting the days attributable to the tolling events listed above and counting as three days each day chargeable to the prosecution that Douglas was incarcerated while awaiting trial, the record demonstrates that Douglas was scheduled to be brought to trial 219 days after his arrest—well within the 270-day timeframe.

{¶26} Notably on appeal Douglas does not contest the reasonableness of the time taken to resolve the delays initiated by his filings. Rather, Douglas appears to only take issue with the trial court charging the time against him from October 25, 2012, to December 7, 2012. Specifically, Douglas argues that on October 24, 2012, he filed a motion to continue the pre-trial hearing scheduled for the next day, on October 25th, on the ground that the prosecution had yet to turn over a recording of the anonymous tip in discovery. The continuance was granted and the hearing was rescheduled for December 7, 2012. Douglas argues that he was ready to proceed with the pre-trial hearing, but was prevented from doing so

based on the prosecution's failure to complete discovery. Specifically, in his motion for the continuance filed on October 24, 2012, Douglas requests the continuance on the ground that "discovery is not complete and the State is working diligently to acquire said discovery." (Doc. No. 24). Thus, Douglas contends that his request for the continuance was necessitated through no fault of his own and therefore the period of continuance should not be charged against him.

{¶27} However, the record demonstrates that Douglas filed his motion to suppress on October 22, 2012, and that matter was not resolved until the trial court issued its ruling on December 17, 2012. Thus, even assuming *arguendo* that the continuance of the pre-trial hearing from October 25, 2012 to December 7, 2012 should not be charged against him, the speedy-trial time was already tolled due to the filing of his motion to suppress. Accordingly, we conclude that the trial court did not err in overruling Douglas' "Motion for Discharge for Failure to Obtain Speedy Trial" because Douglas' right to a speedy trial was not violated. Douglas' fourth assignment of error is overruled.

*First, Second, and Third Assignments of Error*

{¶28} In the remaining assignments of error, Douglas raises issues regarding the trial court's decision to overrule his motion to suppress. Douglas does not dispute the validity of the traffic stop, but instead challenges the trial

court's determination that Trooper Ruth's pat-down search of him was constitutionally valid. Douglas also challenges the trial court's determination that he voluntarily removed the crack-cocaine from his pants.

{¶29} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *See State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, at ¶ 8. With respect to the trial court's conclusions of law, however, our standard of review is de novo and we must decide whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706, 710 (1997).

{¶30} An officer may pat-down an individual for weapons during a traffic stop if the officer has reason to believe the individual may be armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The officer does not need probable cause to arrest the individual for a crime before the officer can pat-down the person for weapons. *Id*. The purpose of the pat-down is to search for weapons that could harm the officer during the stop, not to search for evidence of a crime.

*State v. Minyoung*, 3d Dist. Van Wert No. 15-11-11, 2012-Ohio-411, ¶ 17, citing *State v. Evans*, 67 Ohio St.3d 405, 408 (1993). The officer's right to frisk an individual is virtually automatic when the person is suspected of a crime, such as drug trafficking, where the individual is likely to be armed. *Evans* at 413.

**{¶31}** In the case sub judice, the facts and circumstances apparent to Trooper Ruth at the time of the stop and detention lead him to believe that Douglas may be involved in drug trafficking. Thus, Trooper Ruth's right to frisk Douglas for weapons would have been "virtually automatic." Moreover, Trooper Ruth specifically stated that he conducted the pat-down search to ensure Douglas had no weapons on his person during the stop. Trooper Ruth also noted that Douglas' pants were "extremely baggy" making it difficult for him to ascertain whether Douglas was carrying a weapon without conducting a pat-down frisk. (Supp. Hrg. Tr. at 68). Therefore, we conclude that the trial court did not err in finding Trooper Ruth was justified in conducting the pat-down search of Douglas for weapons.

**{¶32}** Next, Douglas argues that as soon as Trooper Ruth felt the "hard object" below the groin area of Douglas' pants and realized that the object was not a weapon, the justification for the weapons pat-down ceased and Trooper Ruth no longer had a valid reason to continue the frisk. At the suppression hearing, Trooper Ruth testified that "[w]hile I was frisking for weapons I felt a hard object

in his crotch area. At that point, I stopped, [and] mirandized Mr. Douglas. I asked him what was in the crotch area. He reached in and pulled out a bag of crack cocaine." (Supp. Hrg. Tr. at 48).[4] Trooper Ruth further testified that he suspected the object was drugs and not a weapon. However, Trooper Ruth never stated, as Douglas appears to contend, that he continued with the pat-down after feeling the object. Rather, Trooper Ruth explicitly stated that he *stopped the pat-down* and *advised Douglas of his Miranda rights* prior to *Douglas* then pulling the drugs out of his pants. Accordingly, there is nothing in the record to support Douglas' contention that Trooper Ruth's actions exceeded the limited scope of the pat-down frisk.

{¶33} More importantly, in addition to our conclusions above regarding the basis for a weapons pat-down search, we also find that Trooper Ruth had a legitimate basis to conduct a search of Douglas' person independent of the protective pat-down for weapons. Specifically, we find the record establishes that Trooper Ruth had probable cause to search Douglas for drugs.

{¶34} A search or seizure is reasonable under the Fourth Amendment if it is based upon probable cause and executed pursuant to a warrant. *U.S. v. Katz*, 389 U.S. 347, 357 (1967). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that [an] offense has been

---

[4] Trooper Ruth's testimony on this point was corroborated by the video of the stop recorded by the dashboard camera in Trooper Ruth's vehicle. This video was admitted as an exhibit at the suppression hearing.

committed." *Minyoung*, 3d Dist. Van Wert No. 15-11-11, 2012-Ohio-411, ¶ 23, quoting *Henry v. United States*, 361 U.S. 98 (1959). A court must review the totality of the circumstances known to the officer at the time of the search to determine if the officer had probable cause to conduct the search. *State v. Kelly*, 4th Dist. Ross No. 10CA3182, 2011-Ohio-3545, ¶ 23, citing *Beck v. Ohio*, 379 U.S. 89 (1964). The officer must have sufficient objective facts to justify a magistrate to issue a warrant. *State v. Moore*, 90 Ohio St.3d 47, 52 (2000). If an officer has probable cause, the officer may conduct a search without a warrant if an exception to the warrant requirement exists. *Id*. at 52.

{¶35} Here, Trooper Ruth had probable cause to believe that Douglas had committed a drug-related offense based on the accumulation of the following facts and circumstances: (1) The anonymous tip indicating that a drug courier was en route from Columbus to Marion describing a vehicle with occupants similar to the one stopped by Trooper Ruth; (2) the smell of marijuana emanating from the vehicle; (3) Trooper Tidaback's confirmation to Trooper Ruth that he also smelled the marijuana in the vehicle; (4) the driver's admission that they were travelling from Columbus to Marion, further corroborating the anonymous tip; (5) the driver's admission that marijuana had just been smoked in the vehicle; (6) Trooper Ruth's observation of marijuana falling out of Douglas' pant pocket; (7) Douglas' confirmation to Trooper Ruth that the substance in his pocket was marijuana.

**{¶36}** Once Trooper Ruth acquired the requisite probable cause, he was then authorized to search Douglas without a warrant under the exigent circumstances exception to the warrant requirement. *See Moore*, 90 Ohio St.3d 47, 52 (stating that "[b]ecause marijuana and other narcotics are easily and quickly hidden or destroyed, a warrantless search may be justified to preserve evidence" and further finding a search of the defendant's person without a warrant to be valid under similar circumstances to the ones in the instant case).

**{¶37}** Finally, Douglas argues that regardless of the justification for the pat-down the trial court erred in concluding that he voluntarily removed the drugs from his pants. Specifically, Douglas contends that he did not consent to removing the drugs from his pants, but did so merely as an "acquiescence to authority."

**{¶38}** At the outset we note that because we have determined Trooper Ruth had independent probable cause to search Douglas for drugs, Trooper Ruth did not need consent to remove the drugs from Douglas. Moreover, the only legal authority Douglas cites in support of his argument is *State v. Bailey*, 4th Dist. Scioto No. 1725, 1989 WL 74861 (June 27, 1989). The facts in *Bailey* are clearly distinguishable from the present case.

**{¶39}** The court in *Bailey* found that the defendant's compliance with the officer's request to empty his pockets, which resulted in the defendant turning

over a pack of cigarettes containing packets of cocaine, was involuntary based on the totality of the circumstances. *Bailey* at \*6. Specifically, the court in *Bailey* found that the defendant was not adequately apprised of the fact that "by surrendering his cigarette pack discovery of the drugs was inevitable and would result in his arrest." *Id.* The facts the court in *Bailey* relied upon were that the defendant was not advised of his Miranda rights at the time he emptied his pockets, the defendant was not cooperating with police during the stop, and the defendant did not have any prior dealings with law enforcement, all of which suggested to the court that the defendant did not know he could refuse the officer's request. *Id*.

{¶40} In the instant case, none of these facts are present. The record clearly demonstrates that Douglas was advised of his Miranda rights prior to Trooper Ruth inquiring about the object in his pants. There is no indication that Douglas was being uncooperative with Trooper Ruth. Trooper Ruth also testified that if Douglas had refused to remove the object from his pants, he would have had to seek other means to uncover the item. Finally, the record demonstrates that Douglas has had several encounters with law enforcement and the judicial system in the past, which include convictions by a jury in 2007 for trafficking and possession of cocaine. Accordingly, we find no merit in Douglas' argument that the removal of the drugs from his pants was anything other than voluntary.

{¶41} For all these reasons, we conclude that the trial court did not err in overruling Douglas' motion to suppress. Douglas' first, second, and third assignments of error are overruled and the conviction and sentence of the Marion County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and WILLAMOWSI, J., concur.**

**/jlr**